IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAUREN HUGHES *individually and on behalf*
*of all others similarly situated*,
               Plaintiff(s),                    07cv1299

                                                      **ELECTRONICALLY FILED**

   v.

INMOTION ENTERTAINMENT, DOES 1
THROUGH 10, INCLUSIVE
               Defendants.

## MEMORANDUM OPINION

### I.    Introduction.

On May 7, 2008, this Court entered an Order (doc. no. 28) granting preliminary approval

to the parties' Joint Motion for Preliminary Approval of Class Action Settlement (doc. no. 26),

subject to the agreed to notices being published and sent to the class, opportunity for putative

class members to opt out and to object to the settlement, and the final approval of the Court

following a fairness hearing at which the Court would determine whether the settlement was fair,

reasonable and adequate viz a viz the absent class members.  Before the Court is the Notice of

Rescission of Settlement and Motion of Defendant InMotion Entertainment to Vacate

Preliminary Approval Order and to Dismiss Action (doc. no. 29), filed on July 9, 2008.  After

careful consideration of said motion to vacate, plaintiff's response thereto, and the memoranda of

law in support and in opposition thereto, the Court will deny defendant's motion to vacate for the

reasons set forth below.

### II.    Background.

### 1.  The Complaint.

Plaintiff Lauren Hughes filed, in her own right and on behalf of a putative class, a

complaint alleging that InMotion Entertainment and its employees willfully violated the Fair and

Accurate Credit Transaction Act ("FACTA"), codified as relevant to this action at 15 U.S.C. § 1681c(g), and "failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by continuing to print more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit card cardholders transacting business with Defendants." Complaint, ¶ 3. The Complaint seeks "on behalf of herself and the class, statutory damages, punitive damages, costs and attorneys fees, all of which are expressly made available by statute . . . ." Complaint, ¶ 5. Plaintiff alleges that although Defendant had actual knowledge of FACTA's truncation requirements, including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale, and that defendant was provided with notice of these obligations by trade associations such as Visa, Complaint, ¶ 21-22, it failed to comply with FACTA from 2005 through 2008 and, on "September 14, 2007, after the effective date of the statute, Defendant, at its location at Pittsburgh International Airport, Pittsburgh, Pennsylvania, provided Plaintiff with an electronically printed receipt on which Defendant printed the expiration date of Plaintiff's credit or debit card." Complaint, ¶55.

The Complaint also avers that "Defendants, at the point of a sale or transaction with members of the class, provided, either: a) through use of a machine that was first put into use on or after January 1, 2005, at any time after such date; or b) through any machine at any time after December 4, 2006, each member of the class with one or more electronically printed receipts on each of which Defendants printed, for each respective class member, more than the last five digits of such member's credit card or debit card number and/or printed the expiration date of such member's credit or debit card." Complaint, ¶56. The Complaint sets forth allegations as to

2

why the case is appropriate for class action pursuant to Fed.R.Civ.P. 23. Complaint, ¶ ¶ 36-48, 56-65.

The parties were directed to participate in this Court's Alternative Dispute Resolution Program, (doc. no. 2), and selected a highly skilled and respected attorney, Mark R. Hornak, to act as mediator. (doc. no. 20). Following "arms-length negotiations facilitated by experienced complex litigation lawyer/mediator Mark Hornak, the Parties" reached a proposed settlement of the putative class action culminating with a Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), that was attached to their Joint Motion for Preliminary Approval of Class Action (doc. no. 26), as Exhibit 1. Between the parties, the Agreement was fully executed, subject, of course, to this Court's obligation to review any proposed class action settlement for reasonableness, adequacy and fairness to the absent class members under Fed.R.Civ.P. 23(e).

**2. The Settlement Agreement/ Joint Motion for Court Approval.**

The detailed and comprehensive Agreement defined (at section IV. 1.13) the settling class as follows:

> All consumers cardholders who received electronically printed receipts from InMotion at the point of sale or transaction, in a retail credit card or debit card transaction occurring between December 4, 2006, and October 1, 2007, and wherein the receipt displayed (1) more than the last five digits of the consumer cardholder's credit card or debit card number, and/or (2) the expiration date of the consumer cardholder's credit card or debit card.

Agreement, Exhibit 1 to Joint Motion (doc. no. 26-2 at p. 5 of 41).

The settlement set forth the consideration to each qualifying class member as a free rental of one DVD valued at up to $5.00 retail, at any InMotion store or kiosk, and 100 DVDs or CDs

to be donated to a charity selected by InMotion (subject to Class Counsel's approval), and the consideration for defendant to enter into the Agreement was that all members of the putative class would release any and all known and unknown claims. *Id*. at §§ 2.1.1 and 1.27

### 3. Court Order Granting Preliminary Approval.

The Court's Order Granting Preliminary Approval of Proposed Class Action Settlement, Directing the Dissemination of Notice and Scheduling a Final Settlement Hearing (doc. no. 28) stated, in most relevant part:

> The Court has considered the Class Action Settlement Agreement and its exhibits, the joint motion of the Settling Parties for an order preliminarily approving a class action settlement, directing the issuance of notice and setting a final settlement hearing, and all other papers filed in this action. The matter having been submitted and good cause appearing therefore:

> The Court finds as follows:

> 1. All defined terms contained herein shall have the same meanings as set forth in the Class Action Settlement Agreement executed by the Settling Parties and filed with this Court (the "Settlement Agreement");

> 2. The Class Representative and the InMotion Releasees, through their counsel of record in the Litigation, have reached an agreement to settle all claims in the Litigation;

> 3. The Court preliminarily concludes that, for the purposes of approving this settlement only and for no other purpose and with no other effect on the Litigation, should the proposed Settlement Agreement not ultimately be approved or should the Effective Date not occur, the proposed Settlement Class likely meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure: . . . ;

> 4. The moving parties also have presented to the Court for review a Class Action Settlement Agreement. The Settlement Agreement proposes a Settlement that is within the range of reasonableness and meets the requirements for preliminary approval; and

> 5. The moving parties have presented to the Court for review a plan to

provide notice to the proposed Settlement Class of the terms of the settlement and the various options the Settlement Class has, including, among other things, the option for Settlement Class Members to opt-out of the class action; the option to be represented by counsel of their choosing and to object to the proposed settlement; and/or the option to become a Participating Claimant. The notice will be published consistent with the Settlement Agreement. . . .

Good cause appearing therefore, IT IS HEREBY ORDERED that:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action Settlement Agreement is preliminarily approved;

2. The Notice of Proposed Settlement and Conditionally Certified Class Action setting forth the rights of Settlement Class Members to opt in and or out of the settlement and/or to become a Participating Claimant shall be given consistent with the terms of the Settlement Agreement beginning on May 19, 2008.

3. A hearing shall be held before this Court on July 16, 2008 at 8:00 am to consider whether the settlement should be given final approval by the Court:

(a) Written objections by Class Members to the proposed settlement will be considered if received by Class Counsel on or before the Notice Response Deadline;

(b) At the Settlement Hearing, Class Members may be heard orally in support of or, if they have timely submitted written objections, in opposition to the settlement;

(c) Class Counsel and counsel for the InMotion Releasees should be prepared at the hearing to respond to objections filed by Class Members and to provide other information as appropriate, bearing on whether or not the settlement should be approved; and

4. In the event that the Effective Date occurs, all Settlement Class Members will be deemed to have forever released and discharged the Released Claims. In the event that the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

Order of Court dated May 7, 2008 (doc. no. 28).

**4. InMotion's Motion to Vacate.**

Defendant's motion to vacate asserts that plaintiff has been deprived of standing, and this

Court no longer has subject matter jurisdiction to consider the "proposed" settlement, on the

grounds that Congress had amended the life out of plaintiff's class action suit for willful

violation of the truncation requirements of FACTA, 15 U.S.C. 1681n, by its clarifying

amendment of June 3, 2008, which states in pertinent part:

> (d) Clarification of willful noncompliance
>
> For the purposes of this section, any person who printed an expiration date
> on any receipt provided to a consumer cardholder at a point of sale or transaction
> between December 4, 2004, and June 3, 2008, but otherwise complied with the
> requirements of section 1681c(g) of this title for such receipt *shall not be in
> willful noncompliance with section 1681c(g) of this title by reason of printing
> such expiration date on the receipt.*

15 U.S.C. § 1681n, as amended by the Credit and Debit Card Receipt Clarification Act of 2007,

Pub.L. 110-241, § 3(a), June 3, 2008, 122 Stat. 1566 (emphasis added).

InMotion's argument for the judicial dissolution of its Agreement with plaintiffs is

summarized as follows:

> The Preliminary Approval Order must be vacated, and this action must be
> dismissed, because the named plaintiff no longer has standing. Because the named
> plaintiff lacks standing to bring any claim, for herself or on behalf of the alleged
> class, so the Court lacks subject matter jurisdiction. The settlement agreement
> between the parties and the Court's preliminary approval of it do not alter that the
> Court now lacks subject matter jurisdiction by virtue of the Clarification Act. The
> settlement agreement cannot be approved as a matter of law.

Motion to Vacate (doc. no. 29), ¶ 5.

**5. Fairness Hearing.**

On July 23, 2008, the Court convened the fairness hearing as scheduled, but after

discussion with counsel, rescheduled the hearing for September 30, 2008, and directed additional briefing on the motion to vacate the settlement. See Minute Entry (doc. no. 33). On July 23, 2008, the Court issued an Amended Preliminary Approval Order (Amending Dkt. #28) stating as follows:

> In consideration of the Plaintiff's Status Report (Dkt. #32) and the report of counsel for the Parties at the hearing held on Wednesday, July 16, 2008, the Order Granting Preliminary Approval Of Proposed Class Action Settlement ("Preliminary Approval Order") (Dkt. #28) is hereby amended as follows:
>
> (A) Defendant shall fully comply and continue to comply with the notice requirements as set forth in the Preliminary Approval Order (Dkt. #28) so that the Notice of Proposed Settlement and Conditionally Certified Class Action setting forth the rights of Settlement Class Members to opt in and/or out of the settlement and/or to become a Participating Claimant shall be given consistent with the terms of the Settlement Agreement, and shall begin to do so no later than July 23, 2008.
>
> (B) The hearing to consider whether the settlement should be given final approval by the Court shall be held before this Court on September 30, 2008, at 8:00 a.m. At this hearing any written objections by Settlement Class Members to the proposed settlement will be considered if received by Class Counsel on or before the Notice Response Deadline. At the Settlement Hearing, Settlement Class Members may be heard orally in support of or, if they have timely submitted written objections, in opposition to the settlement. Class Counsel and counsel for the InMotion Releasees should be prepared at the hearing to respond to objections filed by Settlement Class Members and to provide other information as appropriate, bearing on whether or not the settlement should be approved. In the event that the Settlement Agreement is approved by the Court and the Effective Date occurs, all Settlement Class Members will be deemed to have forever released and discharged the Released Claims. In the event that the Settlement Agreement is not approved by the Court or the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.
>
> (C) Except as expressly amended by this Order, the Preliminary Approval Order (Dkt. #28) otherwise remains in full force and effect.

Amended Order (doc. no. 35).

Following supplemental briefing, this matter is now ripe for determination.

### III.    Legal Analysis.

Defendant's standing-subject matter jurisdiction argument barely mentions the Settlement Agreement entered by the parties *prior to* passage of the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, § 3(a), June 3, 2008, 122 Stat. 1566, amending the truncation cause of action under FACTA.   However, the Settlement Agreement is the Court's starting point.

### A.    Validity and Enforceblity of Settlement Agreement.

It is a long-standing principle that a voluntary settlement agreement may be binding upon the parties, irrespective of whether it was made in the presence of the Court.  *Green v. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); see also *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) (holding that a settlement agreement is binding despite the fact that it resulted from mediation instead of litigation).   Moreover, a settlement agreement does not even need to be reduced to writing to be enforceable, so long as its material terms have been mutually agreed upon. See *Main Line Theatres, Inc. v. Paramount*, 298 F.2d 801, 804 (3d. Cir. 1962); see also *Good v. The Pennsylvania Railroad Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (holding that a settlement agreement, entered into by duly authorized counsel, was "valid and binding despite the absence of any writing or formality").

Settlement agreements are interpreted as binding contracts and are governed by the ordinary principles of contract law.  *In re Cendant Corp. Litig.*, 233 F.3d 188, 193 (3d Cir. 2000).   There is a strong judicial policy in favor of the voluntary settlement of lawsuits. See *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d. Cir. 1982) (holding that voluntary settlement agreements are "specifically enforceable and broadly interpreted").   As  recently expressed by a

colleague in the United States District Court of New Jersey:

> The [United States Court of Appeals for the] Third Circuit recognizes a strong public policy favoring settlements of disputes, the finality of judgments and the termination of litigation. See *American Iron & Steel Institute v. Environmental Protection Agency*, 560 F.2d 589 (3d Cir. 1977); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir.1982) . . . "Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should." *Pennwalt*, 676 F.2d at 80. . . .

*In re Nazi Era Cases Against German Defendants Litig.*, 236 F.R.D. 231, 241-42 (D.N.J. 2006)

(numerous additional citations omitted). See also *Standard Steel, LLC v. Buckeye Energy, Inc.*,

2005 WL 2403636 *2 (W.D.Pa. 2005) (Conti, J.) ("Settlement agreements are encouraged as a

matter of public policy because they promote the amicable resolution of disputes and lighten the

increasing load of litigation faced by courts."), citing *D.R. by M.R.*, 109 F.3d at 901.

The strong public policy and high judicial favor for negotiated settlements of litigation is

particularly keen "in class actions and other complex cases where substantial judicial resources

can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck

Fuel Tank Prod. Liab. ("In re GMC"),* 55 F.3d 768, 784 (3d Cir. 1995).

In light of the foregoing principles, there is no doubt that the parties, plaintiff Hughes and

InMotion, through capable and experienced counsel, and with the assistance of a well-respected

and experienced mediator appointed pursuant to this Court's mandatory ADR program,

negotiated in good faith and at arm's length a through and comprehensive written settlement

agreement that not only set forth the *material* terms of the Agreement, but also the details of the

parties' performance and expectations, and the legal consequences of the Agreement. The

Agreement is a binding and enforceable agreement under general principles of contract

interpretation.

Thus, the Agreement is binding on both plaintiff and InMotion unless there is something in the Credit and Debit Card Receipt Clarification Act amending 15 U.S.C. §1681c(g) or inherent in the non-finality of class action settlements pending a district court's Rule 23 review and approval that deprives this court of jurisdiction, as defendant claims, or otherwise permits or compels a court to disregard a binding and enforceable settlement agreement between the parties. After careful consideration of defendant's motion to vacate, the Credit and Debit Card Receipt Clarification Act, and this Court's obligations under Fed.R.Civ.P. 23, and mindful of the strong public policy and judicial preference for settlements, this Court finds no reason permitting, let alone compelling, a district court to disregard a valid, binding contract to settle the litigation.[1]

**B.    The Credit and Debit Card Receipt Clarification Act.**

The Credit and Debit Card Receipt Clarification Act set forth Congress's findings and purpose in amending the truncation cause of action under FACTA, including that technical violations regarding the truncation of expiration dates did not cause actual harm to customers where the credit or debit number was truncated as required by FACTA, and that, despite "repeatedly being denied class certification [but not, however, in district courts within the Third Circuit which have routinely approved settlements in similar class action lawsuits], the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding

---

[1] The Court is aware that a well-respected colleague on the United States District Court for the Western District of Pennsylvania has recently rendered a contrary decision. *Ehrheart v. Verizon Wireless*, Civil Action No. 07-1165 (W.D. Pa.) (Ambrose, C.J.). See Opinion and Order dated June 13, 2008 (doc. no. 38) and Order dated July 25, 2008 denying motion for reconsideration (doc. no. 50).

consumer protection benefit." *Id*. at § 2(a)(5-7).  By amending FACTA to provide that persons

who printed an expiration date on any receipt provided to a consumer cardholder at a point of

sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with

the requirements of section 1681c(g), "shall not be in willful noncompliance with section

1681c(g) of this title by reason of printing such expiration date on the receipt," Congress plainly

eliminated the private cause of action based *solely* on failing to truncate the expiration date.

Congress also provided that the "amendment made by subsection (a) shall apply to any

action, *other than an action which has become final*, that is brought for a violation of 605(g) of

the Fair Credit Reporting Act to which such amendment applies without regard to whether such

action is brought before or after the date of the enactment of this Act." *Id*. at § 3((b) (emphasis

added).

Thus, had this clarifying amendment been enacted prior to the execution of the settlement

agreement, the Court would no doubt have seen a motion to dismiss the complaint for failure to

state a claim or for want of jurisdiction, and most likely would have granted such motion, at least

to the extent that any plaintiff's claims may have been based *solely* on the failure to truncate the

expiration dates and not also on failure to truncate the credit and debit card numbers in

accordance with FACTA.  (The Court notes that plaintiff's Complaint includes claims that

defendant issued receipts which did not truncate credit and debit card numbers, and the settling

class is defined to include such potential class members.)

However, the Agreement unambiguously provides that defendant denies all wrongdoing

and all of plaintiff's claims and contentions but that, in order to avoid protracted and expensive

litigation, and taking into account the uncertainty and risks inherent in any litigation, InMotion

determined it to be in its best interests to settle the case. Class Action Settlement Agreement, Exhibit 1 to Joint Motion (doc. no. 26-2) at Sec. III. Similarly, plaintiff agreed to release any and all claims known and unknown, and agreed that the settlement was not an admission that InMotion had violated FACTA. *Id*. at §§ 2.9.5 and 2.9.6.

Pursuant to the plain and unambiguous language of the Agreement and this Court's Order Approving Preliminary Settlement, the settlement and judgment based on the settlement cannot possibly be interpreted as a judicial determination or an admission by defendant that it had been "in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt," and the Agreement is not predicated on such a determination or admission. To the contrary, the settlement was based on a mutual exchange of consideration following good faith, arm's length negotiations by sophisticated counsel, and the Agreement can *in no way* be deemed to be in violation of the Credit and Debit Card Receipt Clarification Act of 2007 or its amendment to 15 U.S.C. § 1681c(g) of FACTA.

Congress said nothing about whether parties to a litigation could mutually agree to settle litigation, and it is well recognized that changes in the law after settlement do not provide grounds for rescission of an otherwise binding settlement agreement. See *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002) (stipulation for settlement precluded corporation from contesting its underlying liability under Coal Industry Retiree Health Benefit Act, even though intervening Supreme Court decision found Act unconstitutional).

The Credit and Debit Card Receipt Clarification Act of 2007 is a clarifying amendment which merely eliminates a cause of action based solely on a person's failure to truncate expiration dates from credit and debit card receipts, and which does not purport to limit parties'

ability to negotiate binding settlement agreements or judicial authority to enforce such settlements of FACTA claims made before the effective date of the amendments. The Court finds that the Credit and Debit Card Receipt Clarification Act of 2007 offers no impediment to enforcement of the Agreement.

**C.      Fed.R.Civ.P. 23(e) - District Court's Obligation to Absentee Class Members.**

Rule 23(e) currently provides:

(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e).

As the language of Rule 23(e) indicates, and as the commentary to the 2003 Amendments to Rule 23(3) explain, this subdivision was "amended to strengthen the process of reviewing proposed class-action settlements. Settlement may be a desirable means of resolving a class action. But court review and approval are *essential to assure adequate representation of class*

*members who have not participated in shaping the settlement.*" (emphasis added). Indeed, the district court's obligations to protect absent class members and to ensure the fairness and adequacy of the settlement to those absentee class plaintiffs has been designated a "fiduciary" duty by the United States Court of Appeals for the Third Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001), citing *In re GMC*, 55 F.3d at 784-85 (with judicial supervision of class actions, "there remains an overarching concern -- that absentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit. . . . [T]he *court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity*, by approving appropriate representative plaintiffs and class counsel." (emphasis added)); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 318 (3d Cir. 2005) ("We have gone so far as to deem the district judge a 'fiduciary' of the class." *In re Cendant Corp. Litig.*, 264 F.3d at 231.

In the related derivative action in the Cendant Corporation litigation, the Court of Appeals for the Third Circuit made clear that the "fiduciary obligation" of a district court reviewing proposed class action settlements runs to the absent class members, not to the defendant corporation which is represented in the class action. In the derivative action, *In re Cendant Corp. Litig.*, 264 F.3d 286 (3d Cir. 2001), the Court of Appeals stated as follows:

> We believe that the District Court correctly identified the applicable law -- under Fed.R.Civ.P. 23(e), courts must determine whether the settlement is fair, reasonable, and adequate *to the class*. The *fiduciary duty to the class* exists because the very nature of the class action device prevents many who have claims from directly participating in the litigation process. See *In re GM Trucks*, 55 F.3d at 805 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees."); see also 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 1.46, at 11-105 to 11-106 (3d ed. 1992) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation

rights against the defendants."). Deutch has not persuaded us that the court's fiduciary duty under Rule 23(e) should be extended to include defendant corporations even if they may be controlled by individuals who have conflicts of interest.

*In re Cendant Corp. Litig.*, 264 F.3d at 296 (emphasis added).

From the foregoing, it is certain that this Court's obligation to review and finally determine whether the settlement is fair and reasonable extends only to the absent class members, to whom the district court owes a fiduciary duty, not to the parties to the settlement negotiations and agreement. The Agreement was fully, fairly and finally executed by the parties and approved by the Court, with the caveat that the Court would determine whether it passed muster in terms of fairness, adequacy and reasonableness to the class members who did not participate in the negotiations and drafting of the Agreement. Absent a determination that the Agreement did not pass muster from the perspective of absent class members, which will be determined at the fairness hearing with reference to the non-exhaustive nine *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) , the only contingency left open in the Agreement, it was and is binding on the parties. If the Court would vacate its previous Order and effectively rescind the Agreement, absent class members would have no recovery given the inevitable motion to dismiss that would follow judicial rescission of the Agreement. Therefore, the Court has no hesitancy in affirming the Agreement as being in the best interests of the class, subject to the fairness hearing and determination of reasonableness and adequacy of the settlement to the class.

Viewed in this light, and mindful that if the Court would vacate its previous Order and effectively rescind the Agreement, absent class members would have no recovery given the inevitable motion to dismiss that would follow judicial rescission of the Agreement, the Court

has no hesitancy in affirming the Agreement as being in the best interests of the class, and

therefore in granting plaintiff's Motion for Final Approval.

**D.  Standing and Jurisdiction.**

**1.  Framing the Issue.**

Defendant argues that plaintiff has no standing to pursue the claims that Congress has

now eliminated as a FACTA cause of action for suits commenced before and after its effective

date.  Plaintiff counters that defendant confuses jurisdiction and standing with the merits, and

that the amendment merely provides a defense on the merits, without depriving the Court of

jurisdiction.  Both arguments are somewhat off target.  The real question in this case is whether

Congress's amendment to FACTA moots plaintiff's case, which is not entirely a "merits"

question and which does have jurisprudential aspects to it.

Thus, the issue is not whether plaintiff has "standing" to bring the FACTA claim before

this Court; clearly he had standing at the commencement of the suit, which (as seen below) is the

point at which a plaintiff's standing is assessed.  Subsequent changes do not divest the Court of

jurisdiction over claims brought by a party who possessed the requisite personal stake in the

outcome at the outset.  See e.g., *Felice v. Sever*, 985 F.2d 1221, 1225 (3d Cir. 1993) (rejecting

defendant's argument that the district court lost subject matter jurisdiction when it dismissed his

civil rights claim and plaintiff abandoned his claim for breach of the duty of fair representation

under federal law, stating: "The fact that the federal claims that were the basis for the removal

were unsuccessful or were dropped during subsequent proceedings does not deprive the district

court of jurisdiction, unless the federal claims were 'insubstantial on their face.'"), quoting

*Hagans v. Lavine*, 415 U.S. 528, 542 n. 10 (1974);  *Herero People's Reparations Corp. v.*

*Deutsche Bank, A.G.*, 370 F.3d 1192, 1195 (D.C. Cir. 2004) (after removal, plaintiff sought to disclaim reliance on federal Alien Tort Act, but "a plaintiff's change in legal theory cannot defeat jurisdiction if a federal question appeared on the face of the complaint.").  Even where all federal claims are dismissed before trial, the district court retains jurisdiction to hear remaining state law claims, although in the exercise of discretion, it should usually decline to exercise its jurisdiction to hear such claims absent extraordinary circumstances.  See e.g., *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (where the "claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (internal quotation marks and citation omitted);  *Shaffer v. Board of Sch. Directors of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) ("We have held that pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.' ") (citation omitted).

### 2. Justiciability Generally.

Federal courts are courts of limited, not general jurisdiction. See *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 383 (1884).  Article III of the Constitution restricts the "judicial power" of the United States to the resolution of "cases" and "controversies."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997);  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  The case and controversy restriction requires that "a litigant have 'standing' to challenge the action sought to be  adjudicated in the lawsuit."  *Arizonans for Official English*, 520 U.S. at 64.

Standing has both constitutional and prudential components, both of which must be

satisfied before a litigant may seek redress in the federal courts. *Id.*; *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994). This Article III restriction requires at the outset that the party invoking federal jurisdiction have standing - the "personal interest that must exist *at the commencement of the litigation*." *Friends of Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (emphasis added; internal quotation marks omitted). But it is not enough that the requisite interest exist at the outset of the lawsuit –  to "qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Arizonans for Official English*, 520 U.S. at 67.

As the United States Court of Appeals for the Third Circuit explained in *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 350 (3d Cir. 1986):

> The judicial authority of the federal courts is defined, in part, by the Article III, § 2 requirement that each case before the courts must involve a "case" or "controversy." This constitutional phrase has been judicially interpreted many times resulting in the development of the related doctrines of justiciability. These include, among other things, the concepts of mootness, political question - and most important to us in this case - standing to litigate. Underlying all of these doctrines is the concern that the exercise of judicial authority must be properly limited in a democratic society. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

(parallel citations omitted).

"'All of the doctrines that cluster about Article III -- not only standing but mootness, ripeness, political question, and the like - relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" *Allen,* 468 U.S. at 750, quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-1179 (D.C.Cir. 1982) (Bork, J., concurring). The question of standing "bears close

affinity" to the question of mootness, as both involve the consideration of whether an Article III case or controversy exists. *Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 385 n. 11 (3d Cir. 1999), citing *Warth*, 422 U.S. at 498-99. "Mootness has been described as 'the doctrine of standing set in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English*, 520 U.S. at 68, n. 22.[2]

As the United States Court of Appeals for the Third Circuit explained in *Bass v. Butler*, 238 Fed.Appx. 773, 775-76 (3d Cir. 2007):

> Standing inquires whether "someone is the proper party to bring a lawsuit at the beginning of the case." *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1246 (3d Cir.1996). "The three elements necessary to establish the irreducible constitutional minimum of standing are: (1) the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *United States v. Hays*, 515 U.S. 737, 742-43

_____

[2] See also *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (explaining that "mootness [is] the 'doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"), quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973); *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III 's 'case' or 'controversy' language, no less than standing does.") (citations omitted); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234 (11th Cir. 2001) ("A party's standing to sue is generally measured at the time the complaint is filed; the effect of subsequent events generally is analyzed under mootness standards."); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, ("Wright & Miller"), Jurisdiction & Related Matters, vol. 13, § 3531 (2d ed.) (standing "focuses . . . on the nature of the injuries that justify the risks of judicial decision. Ripeness and mootness focus more on the questions whether the injury has yet become mature, or has vanished into the past. . . . Both ripeness and mootness, indeed, could be seen as providing time-bound perspectives on the injury inquiry of standing.").

(1995)).

> Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." *Rosetti v. Shalala*, 12 F.3d 1216, 1224 n. 19 (3d Cir. 1993) (citation omitted). "A central question in determining mootness is whether a change in the circumstances since the beginning of the litigation precludes any occasion for meaningful relief." *Surrick v. Killion*, 449 F.3d 520, 526 (3d Cir. 2006) (citation omitted).

See also *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005).

**3. Standing.**

Generally, standing doctrine is "employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself." Wright & Miller, vol. 13, § 3531 (2d ed.). Standing is a jurisdictional requirement, *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 295 (3d Cir. 2003), and is a "threshold question in every federal case." *Wheeler*, 22 F.3d at 537, quoting *Warth,* 422 U.S. at 498.

As the Court of Appeals for the Third Circuit explained, the "standing requirement implicit in Article III is not merely a troublesome hurdle to be overcome if possible so as to reach the merits of a lawsuit, but an integral part of the governmental charter established by the Constitution. . . . If plaintiffs do not possess Article III standing, both the District Court and this Court lack subject matter jurisdiction to address the merits of plaintiffs' case." *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001), quoting *Valley Forge Christian College*, 454 U.S. at 476 (additional citations and internal quotation marks omitted). "Plaintiffs bear the burden of proving standing." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d

Cir. 2003). The concepts employed in the standing analysis, whether constitutional or prudential are, of course, "not susceptible of precise definition" and "cannot be defined so as to make application of the . . . standing requirement a mechanical exercise." *Allen*, 468 U.S. at 751.

A "legally and judicially cognizable" injury-in-fact must be "distinct and palpable," not "abstract or conjectural or hypothetical." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). While it is difficult to reduce injury-in -fact to a simple formula, economic injury is one of its paradigmatic forms. See *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir.1996) ("Economic injury is clearly a sufficient basis for standing."). However, "[i]njury-in-fact is not Mount Everest." *Danvers Motor Co.,* 432 F.3d at 294, citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982) ("The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that claimant allege "some specific, 'identifiable trifle' of injury").

### 4. Mootness.

In a sense, a mootness inquiry asks whether a claimant's standing continues throughout the litigation. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). See also *Donovan ex. rel. Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted) (same). Mootness doctrine "encompasses the circumstances that destroy the justiciability of a suit previously suitable for determination. It is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition. . . . Perhaps as a consequence of adversary litigiousness and crowded dockets, a startling number of cases can be

found dealing with the problems of mootness that arise as events overtake the pace of decision. These problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case. The central question nonetheless is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Wright & Miller, vol. 13, § 3533. "Some of the easiest mootness principles apply to cases in which the plaintiff abandons the quest for relief, or obtains relief by settlement. . . . *Id*. "Settlement moots an action, although of course jurisdiction remains to enter a consent judgment. As with other questions arising out of settlements, mootness questions should be answered according to the intent of the parties and more general contract principles. Acts that reflect composition of the underlying dispute can moot an action even without a formal settlement agreement." *Id*. at § 3353.2.

"The concept of mootness encompasses both constitutional principles under Article III, and jurisprudential policy considerations. With regard to the latter, it is entirely proper for a court to focus on its present ability to provide any meaningful remedy in light of changed circumstances relating to the case." *Kirby v. U.S. Government, Dept. of Hous. & Urban Dev.*, 745 F.2d 204, 208 (3d Cir. 1984). The main question in determining mootness "is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief. *Old Bridge Owners Coop. Corp. v. Tsp. of Old Bridge*, 246 F.3d 310, 314 (3d Cir.2001).

"The United States Supreme Court sets a high threshold for judging a case moot. An appeal is moot in the constitutional sense only if events have taken place that make it "impossible for the court to grant any effectual relief whatever." *Church of Scientology of Cal. v. United*

*States*, 506 U.S. 9, 12 (1992) (citation omitted). An appeal is not moot "merely because a court cannot restore the parties to the status quo ante [the state in which it was before]. Rather, when a court can fashion some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is not moot." *In re Continental Airlines*, 91 F.3d 553, 558 (3d Cir. 1996) (en banc) (" *Continental I*") (citations and quotation marks omitted)." *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 226 (3d Cir. 2003). If "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.' " *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001), quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)).

The FACTA amendment certainly has not eliminated plaintiff's personal stake in the outcome of the litigation, nor does it purport to prevent a court from being able to provide relief in the form of a judgment pursuant to a legally enforceable settlement. It is the settlement that has made the merits and resolution of plaintiff's legal claims moot, if anything, and the settlement preceded the Credit and Debit Card Receipt Clarification Act of 2007. Assuming the Court finds the settlement fair, adequate and reasonable to absent class members, the Court can grant complete relief in this case, judgment on the Agreement. Thus, the FACTA amendment does not deprive plaintiffs of standing to enforce the settlement, does not render the settlement moot, and does not divest this Court of jurisdiction.

**IV.    Conclusion.**

For the foregoing reasons, defendant's motion to vacate will be denied.  An appropriate

Order will follow.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties